# IN THE COURT OF APPEALS OF IOWA

No. 25-0156
Filed April 23, 2025

**IN THE INTEREST OF T.G.,**
**Minor Child,**

**M.L., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

A mother appeals the juvenile court's order terminating her parental rights to her child. **AFFIRMED.**

Thomas J. Richter of Beecher, Field, Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellant mother.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

Tammy L. Banning, Waterloo Juvenile Public Defender Office, Waterloo, attorney and guardian ad litem for minor child.

Considered without oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**AHLERS, Judge.**

The juvenile court terminated both parents' rights to their child born in 2022. Only the mother appeals. Our review is de novo. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021). With de novo review, we give weight to the juvenile court's fact findings, especially as to witness credibility, but we are not bound by them. *Id.*

Our review in termination cases follows a three-step process of (1) determining whether a statutory ground for termination has been established; (2) determining whether termination is in a child's best interests; and (3) determining whether to apply a permissive exception to termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). After addressing any challenged steps, we address any additional challenges raised by a parent. *In re S.L.*, No. 24-1918, 2025 WL 856089, at *1 (Iowa Ct. App. Mar. 19, 2025).

The mother asserts the juvenile court erred in four ways: (1) finding a statutory ground for termination was established; (2) finding termination is in the child's best interests; (3) refusing to apply a permissive exception to termination; and (4) declining to give the mother additional time to work toward reunification. We address each issue in turn.

## I.      Statutory Ground

The juvenile court terminated the mother's rights under Iowa Code section 232.116(1)(g) and (h) (2024). The mother contends neither ground was supported by the evidence. We choose to address only the mother's challenge under paragraph (h), as we are permitted to affirm on any ground supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Section 232.116(1)(h) permits termination upon clear and convincing proof that the child (1) "is three

years of age or younger"; (2) "has been adjudicated a child in need of assistance"; (3) has been removed from the parent's custody for at least six of the last twelve months; and (4) cannot be returned to the custody of the parent.

The mother challenges only the fourth element, contending the State failed to prove the child could not be returned to her custody. But the mother fails to persuade us that the child could be returned to her custody. The child was removed from her custody about fourteen months before the termination hearing due to the mother's methamphetamine use. During that fourteen-month period, the mother tested positive for methamphetamine twice but steadfastly refused to admit use of the drug. Although she obtained a substance-abuse evaluation that recommended no treatment, the evaluation report revealed that the mother had failed to disclose her history of illegal drug use to the evaluator. So the court ordered her to get a second evaluation and disclose her positive drug tests. The mother never got that second evaluation. And she stopped submitting to drug tests in the four-month period leading up to the termination hearing. As the mother provides no persuasive excuses for missing the tests, we presume they would be positive for illegal drugs. *See In re L.A.*, No. 24-2086, 2025 WL 855764, at *2 (Iowa Ct. App. Mar. 19, 2025). The inexcusability of missing the tests is heightened by the fact that (1) the service providers loosened the drug-testing requirements to allow the mother to test in any town whenever she wanted—thus relaxing the usual requirement of randomness and (2) the testing location was within easy walking distance. Furthermore, the mother was diligent in making arrangements to attend visits two times a week in different towns but declined to attend any drug tests. While we commend the mother for prioritizing visits with the child, she also needed

to prioritize addressing her substance-use problem, including submitting to drug testing. Her failure to do so convinces us the child could not be safely returned to her custody.

In addition to her unmitigated substance-use issues, the mother also had longstanding unresolved mental-health issues. While the mother attended mental-health treatment for a while, she stopped going about two months before the termination hearing even though she had not successfully completed treatment. The mother's failure to adequately address her mental-health issues further convinces us the child could not be returned safely to her custody. *See In re D.H.*, No. 18-1552, 2019 WL 156668, at *2 (Iowa Ct. App. Jan. 9, 2019) (collecting cases and finding failure to meaningfully address mental-health issues to be a valid basis for terminating parental rights).

The mother also did not have stable housing for the child. She repeatedly moved into homes with people who were not safe for the child. Those people included a boyfriend who had a no-contact order prohibiting him from seeing his own children and her sister who was convicted of child endangerment for her role in hiding this child from authorities to avoid implementation of the removal order that started the juvenile-court proceedings that led to this termination case. The mother's unstable housing contributes to a conclusion that the child could not be returned to her custody. *See In re D.M.*, No. 18-0086, 2018 WL 1433104, at *2 (Iowa Ct. App. Mar. 21, 2018) (collecting cases finding a child cannot be returned to a parent when the parent does not have stable housing).

Because of the aforementioned problems, the mother never progressed beyond fully supervised visits. Such progress is a necessary step for returning the

child to her custody. *See In re L.H.*, 13 N.W.3d 627, 629 (Iowa Ct. App. 2024) ("[The parent] never progressed beyond fully-supervised visits, which also prevented an immediate return of custody."), *abrogated on other grounds by L.A.*, 2025 WL 855764, at *3.

Following our de novo review, we reach the same conclusion reached by the juvenile court—the child could not be returned safely to the mother's custody. As a result, we reject the mother's challenge to the statutory grounds for termination as the State proved a ground for termination under section 232.116(1)(h).

## II.    Best Interests

In addition to proving a statutory ground for termination, the State must prove termination is in the child's best interests. *A.B.*, 957 N.W.2d at 294. To determine whether termination is in the child's best interests, we apply the framework of section 232.116(2). *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). This requires us to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* (quoting Iowa Code § 232.116(2)).

The mother contends terminating her rights is not in the child's best interests due to her bond with the child, because she does a good job of caring for the child during visits, and she "has the energy and desire to provide ongoing care for" the child.

As for her bond, we agree that the record establishes that such a bond exists, and it is a relevant consideration in the best-interests analysis. *See L.A.*,

2025 WL 855764 at *3.  But we are not persuaded that the bond is such that it is in the child's best interests not to terminate the mother's parental rights.  The child has been in foster care for fourteen months and is very bonded to his foster parents, which is also a relevant consideration.  *See* Iowa Code § 232.116(2)(b).  The foster family provides a stable environment to further the long-term nurturing and growth of the child.  Unfortunately, the same cannot be said of the mother, so we are persuaded that termination is in the child's best interests despite the mother's bond with the child.

We are also not persuaded that the mother meeting the child's needs during supervised visits means termination is not in the child's best interests.  As our supreme court has observed, "there is a substantial difference between meeting a child's needs under the supervision and guidance of other people and being able to independently care for a child . . . ."  *In re J.H.*, 952 N.W.2d 157, 170 (Iowa 2020).  While it is a good thing that the mother meets the child's needs during supervised visits, the critical fact remains that her parenting shortcomings result in the ongoing need for supervised visits.

Finally, the mother's contention that she has the "energy and desire to provide ongoing care for" the child does not advance her cause.  Actions speak louder than words or feelings.  As for her actions, the mother has failed to resolve her substance-use and mental-health issues.  So the child cannot be safely returned to her regardless of any good intentions she may have.

Following our de novo review, we conclude that terminating the mother's parental rights is in the child's best interests.

### III. Exception to Termination

Even when a statutory ground for termination has been established and the State has proved termination is in the child's best interests, we still consider whether any exceptions in section 232.116(3) should be applied to avoid termination. *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). The exceptions are permissive, and the parent resisting termination bears the burden of proving an exception's applicability. *Id.* at 476.

The mother seeks application of the exception in section 232.116(3)(c), which permits us to deny termination upon presentation of "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." In support of her claim, the mother points to the love and bond she shares with the child. But in deciding whether termination would be detrimental to the child due to the closeness of the parent-child relationship, we do not to focus on whether the parent loves the child; rather our "consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs." *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). While there are almost always disadvantages to terminating a parent's rights, that disadvantage does not overcome the mother's inability to provide for the child's needs in this instance. As such, the mother has not met her burden of establishing the applicability of section 232.116(3)(c), so we decline to apply it to avoid termination.

8

## IV.    Additional Time

The mother contends that termination should have been denied and she should have been given additional time to work toward regaining custody.  This is an option permitted by statute.  *See* Iowa Code § 232.117(5) (permitting the court to deny termination and, alternatively, enter a permanency order under section 232.104); *see also id.* § 232.104(2)(b) (providing a permanency option of granting an additional six months for the parent to work toward regaining custody).  But we find no basis for applying it here.  To apply this option, we must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the parent's home will no longer exist at the end of the additional six-month period."  *Id.* § 232.104(2)(b).  On this point, the juvenile court observed:

> This court cannot point to any specific factors, conditions[,] or expected behavioral change which would show the need for removal of [the child] would no longer exist at the end of six months.  Neither parent has made any meaningful progress.  [The mother] does not acknowledge she has mental health or substance abuse issues which need to be addressed.  Her inability to recognize the issues prevents her from correcting the issues.

We agree with this assessment.  To it, we add that the mother's rights to six other children have been terminated previously—five in 2016 and one in 2023.  Leading up to those terminations, the mother received services to address the same problems that have resulted in these termination proceedings.  That means the mother has been receiving services for nearly ten years to address the same problems without any sustained improvement.  Nothing in this record suggests necessary improvement will materialize in the next six months.  Accordingly, we

agree with the juvenile court's decision not to grant the mother additional time to work toward reunification.

**V.      Conclusion**

The State established a statutory ground for termination and that terminating the mother's parental rights is in the child's best interests.  The mother failed to meet her burden to establish the applicability of an exception to termination.  Additional time to work toward reunification is not warranted.  As a result, we affirm the juvenile court's decision to terminate the mother's parental rights to the child.

**AFFIRMED.**